IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| DENISE HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-cv-00107 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WALMART, INC., | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Denise Horton ("Horton"), a former employee of Defendant Walmart, Inc. ("Walmart"), brought this lawsuit under Title VII of the Civil Rights Act, alleging that Walmart discriminated against her on the basis of sex. Walmart now moves for summary judgment on Horton's claims for pay and promotional discrimination. After reviewing the record, the court finds that Horton has failed to establish a *prima facie* case for either claim. The court will therefore grant Walmart's motion for summary judgment.

## I.    BACKGROUND

### A.    Relevant Walmart Policies

All Walmart employees are subject to long-standing compensation practices. These practices are not disputed and are important for assessing Horton's claims.

Each Walmart store has its own pay structure, which is reviewed annually to ensure that it remains competitive in each store's respective labor market. (Decl. of Lisa Riley ¶¶ 13–14, Jan. 22, 2021 [ECF No. 4-1].) In that pay structure, every associate's position is assigned to a particular "pay class" based on the associate's job responsibilities. (*Id.* ¶ 15.) Jobs in the same pay class have the same minimum starting wage. (*Id.* ¶ 16.) While an associate in any

1

particular pay class must be paid at least that minimum wage, Assistant Store Managers—who typically set an associate's starting wage—can increase an associate's wage based on additional skills, experience, or education. (*Id.* ¶¶ 17–18.)

After an associate starts, there are further opportunities for pay increases, including: (1) after a 90-day evaluation; (2) after annual performance evaluations, which are generally completed by the Assistant Store Manager or Co-Manager responsible for overseeing the associate's department and are co-signed by the associate's hourly supervisor; (3) after a "merit increase[]" for "exceptional performance" or for accepting additional responsibilities (*e.g.*, joining a Safety Team); (4) if the associate is promoted or moved into a higher pay class; and (5) if a facility's pay structure is modified to stay competitive in the market. (*Id.* ¶¶ 18–19, 22–24.) When an associate's pay is increased after an annual performance evaluation, the amount is set by the corresponding evaluation rating as provided in Walmart's Compensation Guidelines. (*Id.* ¶ 21.) For example, during the relevant time period for this case, the performance rating for "Standard" in 1998 or "Meets Expectations" in 1999–2000 corresponded to a pay increase of 4%. (*Id.*)

Because of these opportunities, it is not uncommon for associates in the same position to have differing rates of pay at a given time. (*Id.* ¶ 26.) Further, due to the annual pay increases associated with performance evaluations, "it is not uncommon for associates with long tenures at Walmart to earn higher hourly rates than associates in the same (or higher) pay classes who have shorter tenures." (*Id.*)

Walmart's management framework is also relevant to the present analysis. Each Walmart store is led by a Store Manager. (*Id.* ¶ 7.) Some stores have Co-Managers (mid-level, salaried management), and some stores also have Area Managers and/or Assistant Store Managers (the lowest levels of salaried employment). (*Id.*) "Store Managers make key decisions within the store, while delegating many responsibilities to other salaried managers within their store, including Area Managers, [Assistant Store Managers,] and/or Co-Managers." (*Id.*)

To become an Assistant Store Manager, an associate must be selected for and complete Walmart's Management-in-Training program. (*Id.* ¶ 27.) Any interested associate can apply and discuss the opportunity with their Store Manager or other salaried members of management. (*Id.* ¶¶ 27–28.) Walmart's eligibility criteria for the Assistant Store Manager position are: "(1) having an evaluation rating of 3.5 or higher; (2) having one year in the associate's supervisory position; (3) having at least one year total experience; (4) working in a department that was not classified as 'high shrink'; (5) being 100% current on training; and (6) being willing to relocate." (*Id.* ¶ 29.)

**B.    Horton's Walmart Employment History**

Horton worked for Walmart for approximately three years and four months at a store in Charles Town, West Virginia. (*Id.* ¶¶ 35, 45.) Horton began working for Walmart as a cashier on September 16, 1997. (*Id.* ¶ 35.) Her starting pay was $6.00 per hour. (*Id.*) On October 11, 1997, Walmart promoted Horton to "Customer Service Manager" and gave her a $.50 per hour pay increase (to $6.50). (*Id.* ¶ 36.) On December 20, 1997, Horton returned to her position as a cashier, but on July 10, 1998, she resumed working as a Customer Service

3

Manager. (*Id.* ¶ 37.) She also worked briefly as a Merchandise Zone Sales Associate in January 1998. (*Id.*)

According to Walmart's undisputed business records, Horton received the following pay increases: (1) a $0.24 per hour pay increase in January 1998 (to $6.74) following her first 90 days of employment; (2) a $0.27 (4%) per hour pay increase following a performance evaluation in September 1998 (to $7.01); (3) a $0.29 (4%) per hour pay increase following a performance evaluation in September 1999 (to $7.30); (4) a $0.25 per hour pay increase in October 1999 (to $7.55); (5) a $0.45 per hour pay increase in July 2000 (to $8.00); and (6) a $0.32 (4%) per hour pay increase following a performance evaluation in September 2000 (to $8.32). (*Id.* ¶¶ 38–43.)

Donna Anderson, Horton's direct supervisor, completed Horton's performance evaluations. (Dep. of Denise Horton 41:14–17, 42:6–8, Sept. 3, 2020 [ECF No. 4-2].) Horton claims that she received a "perfect" score on nearly all of her performance reviews. (*Id.* at 41:8–23.) Anderson did not recall whether she gave Horton any perfect scores. (Dep. of Donna Anderson 17:13–18, Jan. 11, 2021 [ECF No. 4-3].) Horton's 4% pay increases, outlined above, correspond with a "Standard" or "Meets Expectation" score per Walmart's Compensation Guidelines. (*See* Riley Decl. ¶¶ 21, 44.)

Walmart terminated Horton's employment in January 2001. (*Id.* ¶ 45.) Although Horton does not recall why Walmart fired her, Walmart's business records indicate "Gross Misconduct—Integrity" as the reason for her dismissal. (*Id.*)

## C. Male Comparators

The crux of Horton's pay discrimination claim is that male cashiers and cart pushers earned more than she did despite being in a lower pay class. (Horton Dep. at 34:15–35:15.) Horton claims that Harry Yates, a male cashier, told her that he earned more than she did. (*Id.* at 34:15–35:21.) Horton does not recall how much Yates made, but stated that he earned more because "they all did," referring to "[m]en in general." (*Id.* at 35:2–9.) Besides Yates, Horton identified a cart pusher named Michael or Mike (last name unknown) who told her that he made more than she did. (*Id.* at 35:24–25.)

Walmart's business records, however, indicate the Yates never made more than Horton. (Riley Decl. ¶ 46.) Specifically, Walmart hired Yates on April 4, 2000, at the rate of $6.25 per hour, when Horton was earning $7.55 per hour. (*Id.*) Walmart increased Yates's pay to $7.00 per hour in July 2000, while Horton's pay was increased to $8.00 per hour in July 2000 and to $8.32 per hour in September 2000. (*Id.*) Further, Walmart "reviewed data for all associates who are listed as having worked as Cart Pushers at Store 2566 during Horton's employment there, as well as data for all associates who are listed in Walmart's records with an 'unknown' job title at Store 2566 during Horton's employment there, and found no one with the name 'Mike' or 'Michael' who earned more than Horton did." (*Id.* ¶ 47.)

## D. Promotional Discrimination Facts

Horton filed an EEOC charge on or about May 8, 2012. (ECF No. 4-2 at 21–22.) In her filing, Horton alleged that she was denied promotions to "assistant manager positions in 1998 and 1999" based on her sex. (*Id.*) Horton alleges that she "applied at least twice for the assistant manager position," once "halfway through 1998," and "around a year later in 1999,"

and that Walmart filled both positions with male candidates. (*Id.* at 22.) She does not recall the exact title of the position and she does not recall applying for any other promotions. (Horton Dep. at 55:2–7.) In her deposition, Horton stated: "[A]ssistant manager would have been way above my qualifications." (*Id.* at 55:10–12.) Horton's Store Manager, Clinton Miller, agreed that she was not qualified for an Assistant Store Manager position. (*See* Dep. of Clinton Miller 45:9–47:14, Jan. 4, 2021 [ECF No.4-5].)

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. Edo Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Levitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

### III.  ANALYSIS

There are two ways to establish liability under Title VII for a disparate treatment claim: (1) "demonstrating through direct or circumstantial evidence that [gender] was a motivating factor in the employer's adverse employment action"; or (2) relying on the burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017). The parties agree that this matter falls under the latter burden-shifting scheme. (*See* ECF No. 13 at 12.)

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of sex discrimination. *McDonnell Douglas*, 411 U.S. at 802. If she succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment

7

action. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). Finally, if the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.*

Horton alleges a disparate treatment claim against Walmart for (1) pay discrimination and (2) promotional discrimination on the basis of sex. The court will address each in turn.

**A.     Pay Discrimination**

First, Horton bases her pay discrimination claim on a purported pay disparity between her and two male associates. For a pay-disparity claim, the plaintiff must show that "(1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). "Disparate pay is an adverse employment action under Title VII." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018) (citation omitted).

The undisputed evidence demonstrates that Horton's pay-disparity claim is either based on her faulty memory or inaccurate information. Horton claims that Walmart paid two male associates in a lower pay class—Harry Yates (a cashier) and Michael (a cart pusher)—at a higher rate than it paid her. Walmart's undisputed business records show, however, that at all relevant times, (1) Horton's pay rate was higher than Yates's pay rate, and (2) all cart pushers named Michael or Mike were also paid less than she was. (*See* Riley Decl. ¶¶ 46–47.) Horton does not identify any other similarly situated male comparators, nor does she dispute the accuracy of Walmart's employment records. Horton therefore fails to offer any evidence that

she suffered an adverse employment action via pay disparity and has failed to state a *prima facie* case of discrimination

Second, Horton asserts that Walmart discriminated against her on the basis of sex because she only received $0.10 pay increases despite receiving "perfect" performance evaluations. Again, Horton's claim appears to be based on her faulty memory and is belied by the evidence. As discussed above, Horton received seven pay raises—ranging from $0.24 per hour to $0.50 per hour—increasing her pay from $6.00 per hour to $8.32 per hour during her employment. Indeed, Horton never received a $0.10 raise. Each of Horton's 4% raises from her annual performance evaluations corresponded with Walmart's Compensation Guidelines for "Standard" or "Meets Expectations" ratings at that time.

Further, Horton never identified a male comparator who received more favorable pay increases than she did. With no comparator, Horton cannot establish that she suffered an adverse employment action due to her pay increases. To the contrary, the record establishes that Walmart gave Horton *favorable* pay increases for a variety of reasons, and there is nothing in the record to suggest that anyone—let alone another male—received more favorable treatment in pay raises. Since Horton failed to identify a male comparator who received more favorable treatment, she cannot establish that she suffered an adverse employment action.

In sum, regarding both purported instances of pay discrimination, Horton has not established a *prima facie* case of sex discrimination and has failed to create any genuine issues of material fact. The court will therefore grant summary judgment in favor of Walmart on Horton's pay discrimination claim.

**B.     Promotional Discrimination**

Next, Horton asserts that she suffered promotional discrimination on two occasions, but the court need only address the latter one.[1] Specifically, Horton asserts that Walmart failed to promote her to an "assistant manager" position.[2]

To establish a *prima facie* case of promotional discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959–60.

Walmart identifies this "assistant manager" position as Assistant Store Manager. Based on the record, Horton has failed to present evidence that she was qualified for the position of Assistant Store Manager. Rather, Horton admitted the opposite. Horton stated in her

---

[1] Horton's alleged first instance of promotional discrimination occurred "halfway through 1998." This claim is time-barred. This specific claim was related to, but not part of, a larger class-action lawsuit where the Supreme Court decertified the class because the plaintiffs failed to satisfy Rule 23(a)(2)'s commonality requirement. *Wal-Mart, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). It is undisputed that the decision ended the tolling of limitations for absent class members to pursue individual claims for the same conduct raised in the *Dukes* complaints, dating back to December 26, 1998. *See Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-cv-02252-CRB, 2015 WL 3623481, at *1–3 (N.D. Cal. June 10, 2015) (granting summary judgment in favor of Walmart regarding allegations that occurred before December 26, 1998). Because Horton is seeking to recover for actions that occurred before December 26, 1998, the claim is time-barred. In any event, Horton did not address Walmart's argument in her opposition brief, so the court assumes that she concedes it.

[2] Horton equivocated in her deposition regarding whether she was denied a promotion for "assistant manager" or another kind of management position. (*See* Horton Dep. at 55:2–7 ("And I don't know about assistant manager at all. I believe that needs to be management. I'm just—I'm very uncertain about the word assistant manager. I believe I meant to say management.")). In her EEOC charge of discrimination, however, Horton only identified the "assistant manager" position. (*See* ECF No. 4-2 at 22.) Horton did not address this issue in her opposition brief, so the court again assumes that she concedes it. But to the extent Horton seeks to recover for not receiving a promotion for some other kind of management position, Horton is foreclosed from doing so under Fourth Circuit caselaw. *See, e.g.*, *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge.").

10

deposition that "assistant manager would have been way above my qualifications." (Horton Dep. 55:10–12.) By her own admission, she was not qualified for the promotion she was seeking, and the third element is not satisfied. Therefore, Horton has failed to state a *prima facie* case for promotional discrimination under Title VII, and the court will grant summary judgment in favor of Walmart.

### VI. CONCLUSION

For these reasons, the court will grant Walmart's motion for summary judgment (ECF No. 3). A separate order will issue.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel on record.

**ENTERED** this 16th day of July, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE